## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

June 30, 2003

The Honorable Melanie Spratt-Anderson
Upton County Attorney
P.O. Box 890
Rankin, Texas 79778

Opinion No. GA-0085

Re: Whether the Upton County Commissioners Court may maintain or work on private non-road property or sell county-owned dirt to private individuals for a reasonable fee (RQ-0015-GA)

Dear Ms. Spratt-Anderson:

You ask whether the Upton County Commissioners Court may maintain or work on private non-road property or sell county-owned dirt to private individuals for a reasonable fee.[1]

You explain that Upton County has a population of less than 5,000 and is subject to article III, section 52f of the Texas Constitution,[2] which provides:

> A county with a population of 5,000 or less, according to the most recent federal census, may construct and maintain private roads if it imposes a reasonable charge for the work. The Legislature by general law may limit this authority. Revenue received from private road work may be used only for the construction, including right-of-way acquisition, or maintenance of public roads.

TEX. CONST. art. III, § 52f. Given this constitutional provision, you ask whether "the Upton County Commissioners may maintain or work on private property, that is not a road, if it imposes a reasonable fee" or "may sell County owned dirt to private individuals for a reasonable fee." Request Letter, *supra* note 1, at 1. We gather that the commissioners court would undertake the work on private property using county materials, labor, and equipment.[3]

---

[1]*See* Letter from Honorable Melanie Spratt-Anderson, Upton County Attorney, to Honorable Greg Abbott, Texas Attorney General, at 1 (Feb. 3, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

[2]*Id.*

[3]We assume you ask about the authority of the Upton County Commissioners Court acting as a body rather than about the authority of commissioners acting in an individual capacity. *See Canales v. Laughlin*, 214 S.W.2d 451, 455 (Tex. 1948) ("individual commissioners have no authority to bind the county by their separate action"); *Anderson v.*

(continued...)

Article V, section 18(b) of the Texas Constitution provides that a commissioners court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State." TEX. CONST. art. V, § 18(b). "This provision has been interpreted to mean that although a commissioners court may exercise broad discretion in conducting county business, the legal basis for any action taken must be grounded ultimately in the constitution or statutes." *Guynes v. Galveston County*, 861 S.W.2d 861, 863 (Tex. 1993) (citing *Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948); *Renfro v. Shropshire*, 566 S.W.2d 688, 690 (Tex. Civ. App.–Eastland 1978, writ ref'd n.r.e.)).

For this reason, a commissioners court's authority to contract on behalf of the county is limited to that authority conferred either expressly or by necessary implication by the constitution and laws of this state. *See Jack v. State*, 694 S.W.2d 391, 397 (Tex. App.–San Antonio 1985, writ ref'd n.r.e.) (citing *Childress County v. State*, 92 S.W.2d 1011, 1016 (Tex. 1936); *Wilson v. County of Calhoun*, 489 S.W.2d 393, 397 (Tex. Civ. App.–Corpus Christi 1972, writ ref'd n.r.e.)). And a commissioners court must have statutory authority to charge a fee. *See Camacho v. Samaniego*, 831 S.W.2d 804, 815 (Tex. 1992) (rendering judgment for bail bond businesses because, "as a matter of law, the bond approval fees imposed on bondsmen by the El Paso County Commissioners Court . . . are not authorized by any Texas statute"). You have not identified any statute or constitutional provision that would authorize the commissioners court to maintain or work on private non-road property, to sell county dirt, or to contract for or charge a fee for either activity.

With respect to a county's authority to "maintain or work on private property, that is not a road, if it imposes a reasonable fee," Request Letter, *supra* note 1, at 1, article III, section 52f applies only to private roads and does not authorize a county to maintain private non-road property. *See* TEX. CONST. art. III, § 52f ("A county with a population of 5,000 or less, . . . may construct and maintain *private roads* if it imposes a reasonable charge for the work.") (emphasis added). The legislature has enacted statutes that specifically authorize counties to undertake work on private property in certain limited circumstances.[4] We are not aware of any statute, however, that authorizes a county to maintain or work on private non-road property generally. In the absence of such a statute or a constitutional provision analogous to article III, section 52f, such activities are beyond a commissioners court's authority.

---

[3](...continued)
*Wood*, 152 S.W.2d 1084, 1085 (Tex. 1941) (the commissioners court "is the general business and contracting agency of the county, and it alone has authority to make contracts binding on the county, unless otherwise specifically provided by statute").

[4]*See, e.g.,* TEX. AGRIC. CODE ANN. § 201.151 (Vernon 1982) (permitting use of county equipment on private property for soil conservation and erosion prevention under certain circumstances); TEX. HEALTH & SAFETY CODE ANN. § 713.028(a) (Vernon 2003) ("For purposes of historical preservation or public health, safety, or welfare, a commissioners court may use public funds, county employees, and county equipment to maintain a cemetery that has a grave marker more than 50 years old."); TEX. TRANSP. CODE ANN. § 256.006(e) (Vernon 1999) (permitting county to acquire machinery and equipment for soil, water, erosion, and drainage program for flood control: "The machinery and equipment shall be made available to the owner of a farm or ranch for purposes consistent with the purposes of this section. A farm or ranch owner using the machinery or equipment shall compensate the county for the use according to the actual expenses incurred by the county, not including depreciation.").

Furthermore, in the absence of a constitutional provision like article III, section 52f, a statute authorizing a county to maintain or work on private property would have to comply with article V, section 18(b), which limits commissioners courts' jurisdiction to "county business."[5] TEX. CONST. art. V, § 18(b). A statute must also comply with article III, section 52(a), which prohibits a county from granting public money or a thing of value to a private person. *See id.* art. III, § 52(a) ("Except as otherwise provided by this section, the Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever . . . ."); *Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n,* 74 S.W.3d 377, 383 (Tex. 2002) (article III, section 52(a) "does not prohibit payments to individuals, corporations, or associations so long as the statute requiring such payments: (1) serves a legitimate public purpose; and (2) affords a clear public benefit received in return"). These limitations apply to the use of county labor, materials, and equipment. *See Godley v. Duval County,* 361 S.W.2d 629, 630 (Tex. Civ. App.–San Antonio 1962, no writ) (a commissioners court is "not authorized to permit the use of county labor, materials or equipment for other than public use") (citing *Ex parte Conger,* 357 S.W.2d 741 (Tex. 1962); *Rowan v. Pickett,* 237 S.W.2d 734 (Tex. Civ. App.–San Antonio 1951, no writ)).[6]

With respect to a county's authority to "sell County owned dirt to private individuals for a reasonable fee," Request Letter, *supra* note 1, at 1, the legislature has enacted a number of statutes that specifically authorize counties to sell county property to private parties,[7] none of which expressly authorizes a county to sell dirt. However, subchapter D of chapter 263 of the Local Government Code authorizes counties to sell salvage or surplus property, generally by competitive bid or auction. *See* TEX. LOC. GOV'T CODE ANN. § 263.152 (Vernon Supp. 2003); *see also id.*

---

[5]For example, in 1975 this office considered the constitutionality of proposed legislation that would have authorized counties to use county employees and equipment to construct and maintain private roads and "for private earthmoving work" for a fee, and concluded that the bill was unconstitutional because those activities are not "county business" within the meaning of article V, section 18. *See* Tex. Att'y Gen. LA-92 (1975). The legislature proposed article III, section 52f in 1979 and the voters adopted it in 1980. *See* Act of May 26, 1979, 66th Leg., R.S., § 1, 1979 Tex. Gen. Laws 3231 (adopted Nov. 4, 1980).

[6]*Ex parte Conger,* a 1962 decision of the Texas Supreme Court, involved commissioners in your county. *See Ex parte Conger,* 357 S.W.2d 741 (Tex. 1962). The trial court had issued an injunction that "commanded Upton County, its agents, servants, officers and employees to desist and refrain from using the road machinery and other equipment of Upton County for the benefit of private persons by blading and scraping off lots, filling in lots or hauling dirt, sand, gravel, or caliche or using such road equipment for the benefit of private persons or doing any form of soil or dirt work on private property." *Id.* The Texas Supreme Court upheld the trial court's findings that two Upton County commissioners had violated the injunction by scraping off and removing the brush from private property. *See id.* at 742.

[7]*See, e.g.,* TEX. GOV'T CODE ANN. §§ 1477.070(a) (Vernon 2000) ("The commissioners court may sell, deliver, and distribute any water of the project that is not needed for county purposes to a municipal corporation or political subdivision of this state, or an individual, corporation, or company under terms that the court determines are in the best interests of the county."), 1477.119 ("The commissioners court may sell, deliver, and distribute natural gas of a natural gas system purchased or constructed under this subchapter that is not needed for county purposes to a municipal corporation or political subdivision of this state, or an individual, corporation, or company under terms that the court determines are in the best interests of the county."); TEX. LOC. GOV'T CODE ANN. ch. 263, subch. A (Vernon 1999 & Supp. 2003) (sale or lease of county real property), subch. D (sale of county salvage or surplus personal property).

§ 263.153(a) (Vernon 1999) ("The commissioners court shall publish notice of a sale of surplus or salvage property in at least one newspaper of general circulation in the county.").

In subchapter D, "salvage property" means "personal property, other than items routinely discarded as waste, that because of use, time, accident, or any other cause is so worn, damaged, or obsolete that it has no value for the purpose for which it was originally intended." *Id.* § 263.151(1) (Vernon 1999). "Surplus property" means, on the other hand, "personal property that: (A) is not salvage property or items routinely discarded as waste; (B) is not currently needed by its owner; (C) is not required for the owner's foreseeable needs; and (D) possesses some usefulness for the purpose for which it was intended." *Id.* § 263.151(2).

Because subchapter D authorizes a county to sell only personal property that has no value for the purpose for which it was originally intended or personal property the usefulness of which to the county has diminished, *see id.* § 263.151(1)-(2) (defining salvage and surplus property), it is clear that this statute does not authorize a county to sell property that the county acquired from a third party with the intent to resell it. But dirt that has been removed from county land is the county's personal property, *see Cage Bros. v. Whiteman,* 163 S.W.2d 638 (Tex. Comm'n App. 1942, judgm't adopted) (earth or sand in its original bed is a part of realty; when it is removed, it becomes personalty of the landowner), as is dirt that the county purchased for a county project, and such dirt could fall within the definition of salvage or surplus property, *see* TEX. LOC. GOV'T CODE ANN. § 263.151(1)-(2) (Vernon 1999). Provided that the dirt falls under the definition of either salvage or surplus property, subchapter D would authorize the county to sell it.[8] *See, e.g.,* Tex. Att'y Gen. Op. No. JM-1241 (1990) (trees removed from the county right-of-way are county's personal property and the county's sale of the trees would be governed by chapter 263, subchapter D).

---

[8]Unless otherwise provided by law, a commissioners court must deposit the proceeds from the sale of surplus or salvage property (i) "in the county treasury to the credit of the general fund or the fund from which the property was purchased" or (ii) "if the property was used for maintenance or construction of county roads and bridges, in the county treasury to the credit of the county road and bridge fund." TEX. LOC. GOV'T CODE ANN. § 263.156 (Vernon 1999).

## S U M M A R Y

Article III, section 52f of the Texas Constitution expressly permits counties with a population of 5,000 or less to construct and maintain private roads if they impose a reasonable charge for the work. In the absence of a statute authorizing a county to maintain or work on private non-road property or a constitutional provision analogous to article III, section 52f, such activities are beyond a commissioners court's authority. Provided that county-owned dirt falls under the definition of either salvage or surplus property, subchapter D of chapter 263 of the Local Government Code would authorize the county to sell it.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee